384 So.2d 819 (1980)
MARYLAND CASUALTY COMPANY
v.
Don TRAHAN d/b/a Trahan Texaco Service Station and the Travelers' Insurance Company.
No. 10671.
Court of Appeal of Louisiana, Fourth Circuit.
May 13, 1980.
Rehearing Denied July 3, 1980.
*820 Francipane, Regan & St. Pee, Albert C. Miranda, Metairie, for plaintiff-appellee.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John G. Gomila, Jr., New Orleans, for Don Trahan d/b/a Trahan Texaco Service Station, defendant-appellee.
James J. Morse and Grayson H. Brown, New Orleans, for Travelers Ins. Co., defendant-appellant.
Before SAMUEL, LEMMON and GULOTTA, JJ.
SAMUEL, Judge.
Plaintiff, Maryland Casualty Company, filed this suit against defendants, Don Trahan, d/b/a Trahan Texaco Service Station, and Travelers Insurance Company, Trahan's insurer, seeking to recover as subrogee of its insured the amount of $3,434.22 paid by it as a result of the theft of its insured's 1974 Chevrolet Camaro automobile stolen from Trahan's service station on October 26, 1977.
The defendants answered, denying liability. In addition, Travelers denied coverage for the loss, relying on an exclusion in their garage keeper's liability coverage for thefts by employees.
Trahan filed a third party demand against Travelers for indemnification and cost of defense.
After a trial on the merits, judgment was rendered in favor of plaintiff and against Trahan and Travelers solidarily for $3,434.22. The court also rendered judgment in favor of Trahan and against Travelers for indemnification. Travelers has prosecuted this appeal.
The primary issue presented is whether the trial court applied the proper burden of proof and whether the trial court committed error by failing to hold the automobile was stolen by an employee of defendant Trahan.
*821 The record reflects that on October 25, 1977, Trahan hired a service station attendant to work for him named Terrance Vaughn. The only information Trahan obtained when he hired Vaughn was his name and telephone number. Trahan did not obtain references or other personal information.
During the middle of the night on October 26, 1977, a Chevrolet Camaro owned by plaintiff's insured was stolen from the station. Vaughn, who had custody of the service station from 10 p. m. until 8 a. m. the next morning, left the service station that night and has never returned. The next morning, Trahan found a note which indicated in part that a "lady" had come to the station to pick up the Camaro. In fact, the defendant's insured had not retrieved the Camaro from the service station that night. It was later found at a service station in Mississippi, after having been unclaimed for some time.
Travelers contends that Terrance Vaughn was an assumed name used by Jessie Nesby. When Trahan called the telephone number given him by Vaughn, he spoke with a woman named Lena Barnes. Lena Barnes is Nesby's mother. Lena Barnes testified that on the night of the theft her son was working at a service station. He came home early saying he was not feeling well. He then went out to mail a letter and did not return. She further testified that after the theft, a man from Trahan's Texaco called asking for Terrance Vaughn. She informed the caller she did not know a Terrance Vaughn, but that she had a son named Jessie Nesby, who worked there. She told Trahan she had not seen Jessie Nesby since he left that morning.
The operator of the service station in Mississippi who recovered the stolen vehicle was unable to identify the man who brought the vehicle to his station. Moreover, Trahan was unable to identify a picture of Nesby as being the same person whom he hired under the name of Terrance Vaughn. The handwriting on the note found by Trahan the next morning has not been identified.
Travelers argues the trial judge did not apply the correct burden of proof. However, the standard expressly applied by the trial judge was whether Travelers had established its defense by a preponderance of the evidence that the theft of the vehicle was committed by Trahan's employee.
Ironically, Travelers cites Ned v. Hertz Corp. and Jordan v. Travelers Insurance Company,[1] as authority for the proposition that the trial judge applied the wrong burden of proof. However, both of these cases stand for the proposition that the burden of proof in a civil case is by a preponderance of the evidence and that a preponderance exists when the proof taken as a whole shows that the fact or causation sought to be proved is more probable than not.
Since the record clearly shows that the trial judge applied the burden of proof which Travelers now claims he should have applied, we conclude that Travelers' first specification of error is without merit.
Travelers also contends the trial court committed error by not finding the Camaro was stolen by Trahan's employee. Travelers advances three main arguments to justify this contention.
First, it contends it proved that Vaughn and Nesby are the same person. It cites as evidence of this fact that the telephone number given Trahan by Vaughn and that of Nesby's mother are identical. Travelers also argues Nesby's sister received letters addressed to Vaughn, but Nesby's sister denies knowing anyone named Vaughn. Further, it contends Trahan identified the photograph of Nesby as that of Vaughn. However, the record indicates Trahan was not in fact able to make such identification, apparently because of the short length of time he knew Vaughn and the approximate year which intervened between the theft and the request for identification. Travelers argues the existence of the note left the night of Vaughn's disappearance is evidence of the fact that he stole the Camaro. However, *822 the handwriting of the note was never identified, and this presents little evidence to show that Vaughn in fact did commit the theft.
Second, Travelers argues that flight represents an admission of guilt. However, Travelers never proved that Nesby fled in connection with the theft. Nesby in fact left home on the night of the theft and did not return for approximately one month. However, the operator of the service station in Mississippi where the stolen vehicle was eventually abandoned could not identify the person who left the vehicle at his station, and stated he could not identify him in the future.
Third, Travelers argues that since the thief did not take all or any of the money in the cash register that night, such fact provides additional evidence to support the contention that Vaughn is the thief. Travelers theory, which we do not totally comprehend, is that by leaving some money in the cash register, the thief intended to "reduce the possibility of an all points bulletin being put out for him".
The evidence offered at the trial by Travelers is, by its own admission, circumstantial in nature. Since it based its case on circumstantial evidence, its case must fail unless the circumstances lead to the exclusion of other reasonable hypotheses with a fair amount of certainty.[2]
We conclude the circumstantial evidence advanced by Travelers does not exclude other reasonable hypotheses with a fair amount of certainty. One such alternate hypothesis advanced by Trahan is that the record shows Vaughn drove an automobile to work on the evening in question and that he was informed by the mechanic on duty that he had not finished working on the Camaro and it was not ready to be delivered to its owner. Trahan offers the hypothesis that if Vaughn were to steal an automobile from Trahan's premises, he would have been less likely to take one in a partially assembled condition than one more driveable. Further, Trahan suggests that it is equally likely that he did not take any vehicle at all since he drove to work in his own vehicle, but rather the most reasonable probability from the evidence produced at trial is that during the period while the station was unattended, someone other than Vaughn stole the vehicle not knowing that the repairs had not been completed. That individual, or someone to whom the thief transferred the vehicle, left the car in Mississippi and never returned to retrieve it.
We are of the opinion that the circumstantial evidence produced by Travelers in support of its defense does not exclude all other reasonable hypotheses.
The trial judge obviously was faced with much conflicting evidence from which inferences of fact by necessity had to be drawn or rejected. It is well settled that on appellate review, findings of fact indicate such issues should not be disturbed in the absence of manifest error. On the contrary, the reviewing court must afford great weight to factual conclusions of the trier of fact; and where there is conflict in the testimony, reasonable evaluation of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court might feel that its own evaluations and inferences are reasonable.[3]
Having reviewed the evidence rendered in the trial court, we are of the opinion that the trial judge did not commit error in finding as he did. The evidence, at best circumstantial, leaves much to be desired, and our own independent evaluation indicates that the trial judge's evaluation is not subject to being altered on appeal.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.
LEMMON, J., concurs with written reasons.
*823 LEMMON, Judge, concurring.
The overall evidence, direct and circumstantial, established it was more probable than not that the person who identified himself to Trahan as Terrance Vaughn was Jessie Nesby. Trahan contacted the person to hire him by telephone at the residence of Jessie Nesby's mother and sister; Nesby's sister received mail (bills) at that residence addressed to Terrance Vaughn; and the investigating officer quoted Trahan, upon viewing Nesby's photograph on the morning following the theft, as stating Nesby "did appear to be the same subject that he knew as Terrance Vaughn", noting Trahan declined to charge Nesby with theft because there were no witnesses to link Nesby with the money missing from the station.[1]
The overall evidence, however, does not establish it was more probable than not that Nesby (Vaughn) stole the automobile from the station. He drove a car to work that night (according to the employee he relieved). The car in question was partially disassembled, and the employee he relieved informed him the car was not ready for pick-up. Moreover, there were numerous other cars at the station with keys in the ignition switch. And the station was left unattended most of the night, during which time many people helped themselves to gas. Under these overall circumstances it is at least equally probable that someone other than Nesby (Trahan) stole the car.
Plaintiff (subrogee of the insured) has proved general coverage under the policy, but the insured has failed to bear its burden of proving the exclusion from coverage based on theft by an employee of the insured.
NOTES
[1] La.App., 356 So.2d 1074, and 257 La. 995, 245 So.2d 151.
[2] See Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395; Fogleman v. Piggly Wiggly Operators Warehouse, Inc., La.App., 347 So.2d 75; A & M Pest Control Serv. v. Fejta Const. Co., La.App., 338 So.2d 946.
[3] See Canter v. Koehring Company, La., 283 So.2d 716; First Nat. Bank of Commerce v. Davis, La.App., 365 So.2d 8.
[1] At that point in the investigation Trahan had not yet discovered the automobile was missing.