508 So.2d 956 (1987)
Carl DELGADO
v.
LABOUCHERIE, INC., et al.
No. CA-6987.
Court of Appeal of Louisiana, Fourth Circuit.
June 3, 1987.
Sidney J. Hardy, McGlinchey, Stafford, Mintz, Cellini & Lang, New Orleans, for defendant/appellee, Laboucherie.
Birch P. McDonough, McDonough & McDonough, New Orleans, for defendant/appellee.
Ford T. Hardy, Jr., Elizabeth Morrison, New Orleans, for intervenors.
Before SCHOTT, KLEES and LOBRANO, JJ.
LOBRANO, Judge.
Carl Delgado (plaintiff) filed the instant suit against Laboucherie, Inc., owner of Laboucherie Lounge, and its insurer, AIU Market Pack Company (defendants), for injuries sustained as a result of an assault by Willie Villagram, a lounge patron. Villagram was also a named defendant, but he was not served and his whereabouts are unknown.
The trial court held that defendants did not breach any duty they owed plaintiff, and dismissed the suit. Plaintiff has perfected this appeal.
The issue presented for our determination is whether the trial court was clearly wrong in its factual determination that there was no breach of duty by the defendants.
A review of the record shows the following factual circumstances.
Plaintiff's injuries were incurred on September 6, 1982 at about 2:45 a.m. when Villagram, another patron at the lounge, *957 struck plaintiff across the face with a cocktail glass. Previous to the assault, plaintiff, and several friends, including Lamonica Bell and Kathleen Whitlow, were on the second floor of the lounge, a disco area. They were seated at a table when Villagram walked up and asked Miss Bell to dance. When Bell declined his offer she testified[1] that he (Villagram) began to harass the party by shouting obscenities. She stated this went on for about twenty minutes before Villagram finally left the table and went back to the bar. Plaintiff then went to the bar to order drinks.
According to plaintiff and Bell, an argument then ensued between the two men, and without warning Villagram struck plaintiff with the glass. Plaintiff testified that previous to the assault, and while Villagram was attempting to get Bell to dance, he motioned to Mario Suazo, the doorman, that Villagram was creating a disturbance. According to plaintiff, Suazo ignored this gesture.
Mario Suazo, the doorman on duty the night of the incident, testified by way of depositions taken on April 26, 1984 and September 16, 1985. In his first deposition Suazo testified that he did not see or hear Delgado and Villagram argue prior to the altercation. However, in his second deposition he testified he observed what appeared to be an argument taking place when Villagram asked one of the girls to dance. He didn't intervene because he didn't think it was necessary, or that it would result in any problem. In both depositions he testified that the incident occurred very quickly, and that there was nothing that could have been done to prevent it. His description of the incident was: "It was not a fight. It was just an attack of a guy."
Suazo further testified that Villagram appeared "weird" to him, and that he was uncomfortable around him. However, he acknowledged that Villagram had never caused any problems before. Suazo further testified that neither plaintiff nor anyone in his party sought assistance with respect to Villagram's behavior.
Susan Adams, a bartender at Laboucherie, testified that she never saw the two argue, and that the scuffle broke out very quickly. She testified that as a bartender she knew she was not to serve anyone who appeared to be intoxicated. However, according to Adams, Villagram was not intoxicated. She had seen him in the bar on prior occasions, and he was always well behaved.
The trial court's reasons for judgment indicate that very little weight was given to plaintiff's testimony. A reading of his testimony and deposition (and other impeaching evidence) clearly shows his career as a boxer is obviously a fabrication. Plaintiff's attorney concedes this in brief. However, he argues there is sufficient other evidence to establish a breach of duty by defendant. Specifically he relies on the testimony of Suazo.
As noted above, we have reviewed the deposition testimony of Suazo and note that the second deposition appears more favorable to plaintiff's cause. However, we also note that Suazo's testimony may also be subject to question because of the fact that he was fired by defendant for reasons unrelated to this case. Even taking those portions favorable to the plaintiff, in either deposition, and applying them to the applicable law, we cannot say the trial judge was clearly wrong in his decision.
The basic duty owed to a patron by an establishment such as Laboucherie is succinctly stated in Anderson v. Clements, 284 So.2d 341 (La.App. 4th Cir.1973):
"The basic duty owed to a patron by an establishment such as that of the defendant was set forth in DeHart v. Travelers Insurance Co. [10 So.2d 597 (La.App. 1942)], which involved an assault upon a patron by another patron while the owner of the coffee house in which the assault took place was absent from the premises. There the court stated that while the proprietor of a public place is not the guarantor of his patrons' safety, he owes them a duty to exercise reasonable care to protect them from harm at *958 the hands of fellow guests or at the hands of his employees; such a proprietor owes the duty to guests to protect them from insult, annoyance and danger, and his guests have a right to rely on the belief they are in an orderly house and are protected from injury by the exercise of reasonable care for their safety by the operator of the establishment or his representative." at p. 344
That duty does not make the proprietor the absolute insurer of a patrons' safety, nor does it extend to the unforeseeable or unanticipated criminal acts of an independent third person. Pennington v. Church's Fried Chicken, Inc., 393 So.2d 360 (La.App 1st Cir.1980). The owner's duty to protect patrons arises when he has knowledge, or can be imputed with knowledge, of the third person's intended conduct. Id. That duty may also encompass the duty to call the police if time allows. See, Rodney v. Mansur, 219 So.2d 305 (La.App. 1st Cir. 1969).
We are of the opinion that the attack on plaintiff was sudden and could not have been reasonably prevented by defendants or their employees. Although there was a prior exchange of words between the parties over Bell's refusal to dance with Villagram, we cannot say the trial court was clearly wrong in deciding that defendant did not have sufficient warning to prevent the attack.
Plaintiff relies on Borne v. Bourg, 327 So.2d 607 (La.App. 4th Cir.1976). In that case, the Court held the establishment liable for plaintiff's injuries where the bartender had actually been informed and recognized the dangerous confrontation developing between the two men. In Borne the bartender cautioned both parties and telephoned the Sheriff's office for assistance. However, he requested a specific deputy and when that deputy was not available, the bartender terminated his call for assistance. The two men continued arguing, a fight ensued and plaintiff sustained injuries. The Court concluded that under those circumstances the defendant-establishment breached its duty to protect its patron's welfare.
This is not the situation in the instant case. We conclude that there was insufficient knowledge of impending danger which would warrant any action by defendant. In the absence of such knowledge, there was no breach of duty. There is no clear error which would warrant a reversal of this case.
For the above and foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Her testimony is by way of deposition stipulated into evidence by all parties.